# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **GLOBAL BLUE TECHNOLOGIES-USA, LLC; GLOBAL BLUE TECHNOLOGIES-CAMERON, LLC; GLOBAL BLUE TECHNOLOGIES, INC.; GLOBAL BLUE TECHNOLOGIES-INTERNATIONAL, LLC; SEA PRODUCTS DEVELOPMENT, LLC; EDUARDO FIGUERAS; and JOHN L. HARVIN,** | § § § § § § § § § | |
| *Plaintiffs*, | § § | **CIVIL ACTION NO. 2:16-CV-27** |
| **v.** | § § § | |
| **SHRIMP IMPROVEMENT SYSTEMS, L.L.C., CENTRAL PROTEIN PRIMA TBK, and CHAROEN POKPHAND FOODS PCL,** | § § § § | |
| *Defendants*. | § | **JURY TRIAL DEMANDED** |

## SHRIMP IMPROVEMENT SYSTEMS, L.L.C.'S MOTION TO DISMISS UNDER RULE 12(B)(6), AND ALTERNATIVELY, UNDER RULE 12(B)(1)

VINSON & ELKINS L.L.P.

Jason M. Powers
James A. Reeder
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:  713-758-2522
Facsimile:  713-615-5809

***Attorneys for Defendant***
***Shrimp Improvement Systems, L.L.C.***

**<u>TABLE OF CONTENTS</u>**

I.    Introduction. ....................................................................................................1

II.   To state a claim, a plaintiff must plead facts—not vague assertions or legal
      conclusions—demonstrating a plausible entitlement to relief............................3

III.  Plaintiffs do not state a claim under federal or state antitrust law.....................5

      A.    Plaintiffs do not allege facts showing a conspiracy prohibited by Section I
            (Count I). ..........................................................................................5

            1.    Plaintiffs fail to plead adequate facts regarding the alleged
                  conspiracy. ...............................................................................5

            2.    Plaintiffs do not adequately allege a restraint of trade. ...............8

      B.    Plaintiffs do not state a Section 2 claim for monopolization or attempted
            monopolization of any relevant market (Count II)................................10

            1.    Plaintiffs do not sufficiently allege a relevant market..............11

            2.    Plaintiffs do not allege that SIS possesses or has a dangerous
                  probability of achieving monopoly power. ...............................13

            3.    Plaintiffs do not allege Defendants willfully obtained monopoly
                  power in the alleged relevant market.........................................14

            4.    Plaintiffs do not allege facts regarding any conspiracy to
                  monopolize. ............................................................................15

            5.    The alleged refusal of SIS to sell shrimp to Plaintiffs for
                  broodstock purposes is not anticompetitive conduct.................15

      C.    Plaintiffs do not allege the existence of any agreement prohibited by
            Clayton Act Section 3 (Count III). .......................................................17

      D.    Plaintiffs do not state a claim under Texas antitrust law (Count IV). ...18

IV.   Plaintiffs' claim for declaratory relief must be dismissed...............................19

      A.    Because Plaintiffs do not state an antitrust claim, their request for
            declaratory relief based on an illegal restraint of trade fails (Count V). ...19

      B.    Because Figueras does not allege that the SIS employee handbook
            contains a non-competition clause, his request for declaratory relief fails
            (Count VI). ......................................................................................20

      C.    Alternatively, Plaintiffs do not plead a basis for jurisdiction over their
            declaratory relief claims, requiring 12(b)(1) dismissal. ........................22

V.    Prayer..........................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*,
   300 F.3d 620 (5th Cir. 2002) ...................................................................12, 17, 18

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937 (2009)..................................................................3, 4

*Audiology Distrib., LLC v. Simmons*,
   No. 8:12-CV-02427, 2014 WL 7672536 (M.D. Fla. May 27, 2014)......................22

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007)......................................................................................passim

*Bernier v. Merrill Air Engineers*,
   770 A.2d 97 (Me. 2001)........................................................................................21

*Branch v. Tunnell*,
   14 F.3d 449 (9th Cir. 1994) .................................................................................20

*Christy Sports, LLC v. Deer Valley Resort Co.*,
   555 F.3d 1188 (10th Cir. 2009) .............................................................................7

*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000) ...............................................................................20

*Corr Wireless Commc'ns v. AT&T Inc.*,
   893 F. Supp. 2d 789 (N.D. Miss. 2012)...............................................................15

*Deauville Corp. v. Federated Dep't Stores*,
   756 F.2d 1183 (5th Cir. 1985) .............................................................................13

*Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*,
   679 F.2d 516 (5th Cir. 1982) .........................................................................11, 15

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)...............................................................................................4

*Elton Porter Marine Ins. Agency v. Markel Am. Ins. Co.*,
   No. CIV.A. H-11-4432, 2012 WL 2050254 (S.D. Tex. June 6, 2012)...................18

*Felder's Collision Parts, Inc. v. Gen. Motors Co.*,
   960 F. Supp. 2d 617 (M.D. La. 2013)........................................................11, 13, 14

*Field v. Trump*,
   850 F.2d 938 (2d Cir. 1988)................................................................................20

ii

*Guajardo v. JP Morgan Chase Bank, N.A.*,
  605 F. App'x 240 (5th Cir. 2015) ................................................................. 19

*Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*,
  658 F.3d 500 (5th Cir. 2011) ....................................................................... 3

*Gulf Oil Corp. v. Copp Paving Co., Inc.*,
  419 U.S. 186 (1974) ..................................................................................... 17

*Harvey v. Grey Wolf Drilling Co.*,
  542 F.3d 1077 (5th Cir. 2008) ..................................................................... 24

*Howery v. Allstate Ins. Co.*,
  243 F.3d 912 (5th Cir. 2001) ....................................................................... 24

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
  2008 WL 5958061 (E.D.N.Y. Sept. 26, 2008) ............................................. 8

*In re Baby Food Antitrust Litig.*,
  166 F.3d 112 (3d Cir. 1999) ......................................................................... 9

*In re Late Fee & Over-Limit Fee Litig.*,
  528 F. Supp. 2d 953 (N.D. Cal. 2007) .......................................................... 8

*In re Parcel Tanker Shipping Services Antitrust Litig.*,
  541 F. Supp. 2d 487 (D. Conn. 2008) ........................................................... 7

*In re Shipley Garcia Enterprises LLC*,
  No. 11-20016, 2014 WL 1329252 (Bankr. S.D. Tex. Mar. 28, 2014) .......... 18

*Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*,
  677 F.2d 1045 (5th Cir. 1982) ..................................................................... 17

*Kendall v. Visa U.S.A., Inc.*,
  518 F.3d 1042 (9th Cir. 2008) ................................................................. 5, 7

*Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*,
  569 F.2d 286 (5th Cir. 1978) ....................................................................... 21

*Love Terminal Partners, L.P. v. City of Dallas, Tex.*,
  527 F. Supp. 2d 538 (N.D. Tex. 2007) .......................................................... 8

*Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*,
  751 F.3d 368 (5th Cir. 2014) ................................................................. 5, 6, 9

*McCoy v. Chevron USA Prod., Inc.*,
  46 F. Supp. 2d 510 (E.D. La. 1999) ............................................................. 24

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
  465 U.S. 752 (1984) .................................................................5

*Papasan v. Allain*,
  478 U.S. 265 (1986) .................................................................4

*Proudfoot Consulting Co. v. Gordon*,
  576 F.3d 1223 (11th Cir. 2009) ...............................................22

*Re/Max Int'l, Inc. v. Citimaxx Corp.*,
  No. 08-cv-2554, 2009 WL 1883035 (M.D. Fla. June 30, 2009) ...........22

*Revere Transducers, Inc. v. Deere & Co.*,
  595 N.W.2d 751 (Iowa 1999) .................................................22

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
  786 F. Supp. 2d 1190 (S.D. Tex. 2009) ...........................6, 11, 13

*Robbins v. Oklahoma*,
  519 F.3d 1242 .......................................................................7

*Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*,
  802 F. Supp. 1544 (S.D. Tex. 1991) ........................................12

*Sheppard v. Texas Dep't of Transp.*,
  158 F.R.D. 592 (E.D. Tex. 1994) .............................................20

*Spectrum Sports, Inc. v. McQuillan*,
  506 U.S. 447 (1993) ...............................................................11

*Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*,
  200 F.3d 307 (5th Cir. 2000) ..................................................11

*Synergetics, Inc. v. Hurst*,
  477 F.3d 949 (8th Cir. 2007) ..................................................21

*Times Herald Printing Co. v. A.H. Belo Corp.*,
  820 S.W.2d 206 (Tex. App.—Houston [14th Dist] 1991, no writ) .........18

*Ultraflo Corp. v. Pelican Tank Parts, Inc.*,
  823 F. Supp. 2d 578 (S.D. Tex. 2011) .....................................23

*United Mine Workers of Am. v. Gibbs*,
  383 U.S. 715 (1966) ...............................................................24

*United States v. Colgate & Co.*,
  250 U.S. 300 (1919) ...............................................................16

*United States v. E.I. DuPont de Nemours & Co.*,
   351 U.S. 377 (1956) ...................................................................................13

*United States v. Nippon Paper Industries Co.*,
   62 F. Supp. 2d 173 (D. Mass. 1999) .........................................................9

*United States v. Pearce*,
   912 F.2d 159 (6th Cir. 1990) .....................................................................9

*VanZandt v. Oklahoma Dept. of Human Svcs.*,
   276 F. App'x 843 (10th Cir. 2008) ...........................................................7

*Venture Assocs. Corp. v. Zenith Data Sys. Corp.*,
   987 F.2d 429 (7th Cir. 1993) ...................................................................20

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*,
   540 U.S. 398 (2004) ..................................................................................16

*William O. Gilley Enters. v. Atlantic Richfield* Co.,
   588 F.3d 659 (9th Cir. 2009) .....................................................................4

*Williams v. Wells Fargo Bank, N.A.*,
   560 F. App'x 233 (5th Cir. 2014) .............................................................19

**Statutes**

15 U.S.C. § 14 (1997)........................................................................................17

15 U.S.C. § 2 ......................................................................................................11

28 U.S.C. § 1367(c)(3) ......................................................................................24

Tex. Bus. & Com. Code § 15.04.......................................................................18

Tex. Bus. & Com. Code §§ 15.01 *et seq.* .......................................................18

**Rules**

Fed. R. Civ. P. 12(b)(1) .............................................................................1, 22, 25

Fed. R. Civ. P. 12(b)(6) .............................................................................1, 23, 25

**Other Authorities**

5 Wright & Miller, Federal Practice & Procedure § 1206 (2004)...................23

5 Wright & Miller, Federal Practice & Procedure § 1238 (2004)...................23

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Shrimp Improvement Systems, L.L.C. ("SIS") hereby moves to dismiss Plaintiffs' Original Complaint ("Complaint" or "Compl.") for failure to state a claim for which relief can be granted. Alternatively, and only to the extent the Complaint is read to seek declaratory relief on state law grounds other than antitrust law, SIS requests that the Court dismiss the antitrust claims under Rule 12(b)(6) and dismiss the state law requests for want of subject matter jurisdiction under Rule 12(b)(1).

## I.    Introduction.

Plaintiffs admit that they broke promises to SIS, and expecting they would soon be sued for doing so, filed this antitrust lawsuit in hopes of excusing their wrongful conduct. But the few facts alleged in Plaintiffs' complaint show that there is no antitrust claim here.

Much of the shrimp consumed in the United States is not caught from the ocean, but rather, is produced in shrimp farms—ponds or tanks on land. Most shrimp farmers stock their ponds with young hatchlings ("post-larvae" (PL) or "juvenile" shrimp), which the farmers feed and grow over a period of months until the shrimp reach adult weights and can be sold in the food market. The farmers acquire their hatchlings from hatcheries, which are in the business of producing PLs for farmers. To produce the PLs, hatcheries use "broodstock," *i.e.*, mature breeding-quality shrimp from which future generations of PLs and broodstock can be generated. Hatcheries develop their own lines of broodstock over time, or they may buy broodstock from others, or both.

SIS is a leading provider of shrimp broodstock to shrimp hatcheries and shrimp farms in the United States and around the world. It has been a pioneer in selectively breeding shrimp to favor desirable natural traits, like disease resistance, rapid growth, and greater adult weights, making it possible for shrimp farmers to produce shrimp more quickly, more efficiently, and more safely. Though Plaintiffs do not say so, SIS is primarily in the business of selling

broodstock to hatcheries, and those hatcheries then produce PLs to be sold to those hatcheries' customers or to be used in their own farming operations.  SIS also sometimes sells PLs directly to shrimp farmers, but the business of selling PLs is a smaller, secondary business for SIS, in part because PLs are cheaper to buy.  Growing shrimp for meat from the PL stage to maturity is a low-margin business, and the farmers who do that work (many of whom are individuals or small businesses) need affordable prices.  Broodstock shrimp create greater opportunities for their buyers.  They are carefully bred animals that can produce multiple generations of quality PLs and supply many farms.  Broodstock shrimp accordingly sell for much higher prices than PLs do.

The "Global Blue" companies that bring this case purchased low-cost PLs from SIS. Like all purchasers of PLs, to get the low PL-level price, Global Blue agreed that it would use the PLs as intended—to grow the PLs for meat, not to create new generations of broodstock.  But Plaintiffs now admit they were buying PL animals at PL prices and then using those animals to create new broodstock, in violation of the agreement they signed.

Plaintiffs now claim that SIS is a monopolist, foreclosing competition.  But what Plaintiffs seek in this case is not the right to compete with SIS.  What they seek is the right to free ride on SIS's enormous investment of time, money, and effort selectively breeding some of the best quality shrimp in the world.  Antitrust law does not create a right to make profit off of someone else's investment.  Plaintiffs' claims should be dismissed.

First, Plaintiffs have not alleged any facts in support of their conclusory and speculative claim that there is some kind of Section 1 conspiracy to restrain trade.  Plaintiffs have not identified any details of any so-called conspiracy, and have not explained how a conspiracy to restrain the Texas shrimp trade could possibly succeed in what they admit is a worldwide shrimp market with overwhelming foreign competition.

Second, Plaintiffs have not alleged any facts to support their Section 2 monopolization claims. Plaintiffs have not alleged a plausible relevant market, much less that SIS can or is likely to achieve market power in any such market in light of foreign competition or the alternatives to SIS in the development of broodstock.

Third, although Plaintiffs assert a claim against the use of illegal exclusive dealings or tying contracts, Plaintiffs do not even allege that they entered into any such contracts.

Last, Plaintiffs seek declarations that they should be freed from any non-competition agreements. But Plaintiffs do not allege any plausible theory for that remedy, and in the case of Plaintiff Eduardo Figueras, do not even factually allege that he is subject to a non-competition agreement. In fact, Mr. Figueras is subject to an ordinary confidentiality agreement, not a non-competition agreement. To the extent Plaintiffs seek any further remedy, they have not established that it would be within the Court's subject matter jurisdiction.

For the reasons stated below, Plaintiffs' complaint should be dismissed.

## II.    To state a claim, a plaintiff must plead facts—not vague assertions or legal conclusions—demonstrating a plausible entitlement to relief.

Under the U.S. Supreme Court's *Twombly* and *Iqbal* decisions, to survive a motion to dismiss, a complaint must contain enough facts to state a claim to relief that is "plausible" on its face. *Gulf Coast Hotel-Motel Ass'n v. Miss. Gulf Coast Golf Course Ass'n*, 658 F.3d 500, 504 (5th Cir. 2011) (citing *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. Recognizing that "antitrust discovery can be expensive," the Supreme Court cautions district courts that a plaintiff should not be allowed to use a "largely groundless" claim to obtain discovery that adds an "*in terrorem* increment" to the cost of

defending and resolving a case. *Twombly*, 550 U.S. at 558 (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). The plausibility rule imposes two requirements that are especially important in antitrust cases.

First, while a court on a motion to dismiss must assume that all factual allegations in the complaint are true, that same presumption does not apply to legal conclusions or legal conclusions masquerading as fact allegations. *Twombly*, 550 U.S. at 555; *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Mere recitals of the "elements of a cause of action" together with "conclusory statements" do not suffice to state a claim for relief. *Iqbal*, 129 S. Ct. at 1949. Instead, the complaint must set forth "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of illegality. *Twombly*, 550 U.S. at 556.

Second, in an antitrust case, the court's determination of plausibility takes into account not only the logical consistency of the plaintiffs' allegations, but also "common economic experience." *Twombly*, 550 U.S. at 565. In other words, courts consider whether the "claim is 'plausible' in light of basic economic principles." *William O. Gilley Enters. v. Atlantic Richfield Co.*, 588 F.3d 659, 662 (9th Cir. 2009). As explained below, courts diligently consider whether allegations of market definition, market power, and competitive effects are plausible and logical, in the same way that the Supreme Court scrutinized the plaintiffs' characterizations of local telephone markets in *Twombly*. This approach complies with the Supreme Court's admonition that a court should "draw on its judicial experience and common sense" in reviewing a complaint to determine whether it states a claim that is "plausible on its face." *Iqbal*, 129 S. Ct. at 1949-50.

III.    **Plaintiffs do not state a claim under federal or state antitrust law.**

A.      **Plaintiffs do not allege facts showing a conspiracy prohibited by Section I (Count I).**

To plead a Section 1 violation, a plaintiff must allege that the defendants engaged in a conspiracy that restrained trade in a relevant market. *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 373 (5th Cir. 2014). As to the necessary element of conspiracy, "the crucial question … is whether the challenged anticompetitive conduct stems from independent decision or from an agreement." *Twombly*, 550 U.S. at 553 (internal quotations omitted). The plaintiff must plead that the defendants engaged in concerted action, defined as having "a conscious commitment to a common scheme designed to achieve an unlawful objective." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984).

Plaintiffs' Complaint falls far short of these pleading requirements for at least two reasons. First, Plaintiffs fail to allege any facts supporting a plausible claim that SIS or any other Defendant reached an agreement or conspired with anyone to do anything. Second, Plaintiffs' Complaint lacks factual allegations that would plausibly plead an illegal restraint of trade. The Complaint wholly fails to allege any facts that would support a claim that Defendants reached an agreement or common objective on any subject, much less an agreement or common objective to engage in conduct actionable under the Sherman Act.

1.      **Plaintiffs fail to plead adequate facts regarding the alleged conspiracy.**

Under *Twombly*, "to allege an agreement between antitrust co-conspirators, the complaint must allege facts such as a 'specific time, place, or person involved in the alleged conspiracies' to give a defendant seeking to respond to allegations of a conspiracy an idea of where to begin." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1047 (9th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10). The plaintiff "must plead not just ultimate facts" such as "'conspiracy' or even

'agreement,'" but must also "plead the necessary evidentiary facts to support those conclusions." *Id.* at 1047-48. Without facts plausibly suggesting a "meeting of the minds" on an unlawful objective to restrain trade, a Sherman Act Section 1 claim should be dismissed. *Marucci Sports*, 751 F.3d at 375.

In Count I, Plaintiffs allege that Defendants "contracted, combined in the form of trust or otherwise, or conspired" to use "restrictive covenants" and other, unspecified, "aggressive tactics" to "prevent the sale in the United States of pure lines of broodstock and postlarvae shrimp to shrimp farmers." (Compl. ¶¶ 131-32.) These are not factual allegations at all, but merely a patchwork of statutory language, labels, and bald conclusions. "A naked allegation of a conspiracy or agreement, without more, is not sufficient to state a claim under Section 1." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1190, 1198 (S.D. Tex. 2009). Indeed, for purposes of assessing the legal viability of the Complaint, unsupported conclusions like this are to be disregarded. *Twombly*, 550 U.S. at 555.

When these legal conclusions are stripped away, there is nothing of substance left. Nowhere in the Complaint could Defendants or this Court ascertain who is alleged to have conspired, much less when, how, or to what purpose. Indeed, the Defendants other than SIS are barely mentioned in the Complaint at all, and there is no explanation of what interest those foreign companies could possibly have in engaging in a conspiracy related to Plaintiffs.

For example, the Complaint alleges no facts about the participants in the alleged conspiracy, except to say that it involved Defendants and "[o]ther entities and individuals unknown to Plaintiffs at this time" and untold numbers of "officers, directors, agents, employees, representatives, parents, predecessors, or successors-in-interest while they were engaged in the management, direction, control, or transaction of business or affairs of the corporation or

partnership." (Compl. ¶ 133.) This absurdly broad language suggests an attempt to plead nothing more specific than that there could be some conspiracy somewhere in the world somehow dealing with the shrimp industry. This is insufficient under *Twombly* because it "furnishes no clue as to which of the … [defendants] (much less which of their employees) supposedly agreed, or when and where the illicit agreement took place." *Twombly* 550 U.S. at 565 n. 10. Courts reject such pleadings because they fail to give the most basic notice of claim, particularly where, as here, there are multiple defendants. In cases such as this one, involving "complex claims against multiple defendants," "it is particularly important … that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-50 (emphasis in original); *see also VanZandt v. Oklahoma Dept. of Human Svcs.*, 276 F. App'x 843, 848 (10th Cir. 2008).[1] "A bare allegation of a conspiracy is almost impossible to defend against, particularly where the defendants are large institutions with hundreds of employees entering into contracts and agreements daily." *Kendall*, 518 F.3d at 1047; *see also In re Parcel Tanker Shipping Services Antitrust Litig.*, 541 F. Supp. 2d 487, 490-91 (D. Conn. 2008) (dismissing complaint which alleged "general conspiratorial activity without reference to specific actions by a particular defendant at a particular time").

Neither does the Complaint specify the time, manner, or contents of any conspiracy or agreement. The Complaint merely sets forth boilerplate that the Defendants and their unknown

---

[1] Although *Robbins* and *VanZandt* involve claims brought against individual government actors under Section 1983, the Tenth Circuit made it clear that it was applying "the same standard" that applies "to dismissals generally." *Robbins*, 519 F.3d at 1249. The court acknowledged that "[t]he *Twombly* standard may have greater bite" in certain contexts, including cases that "include complex claims against multiple defendants," such as the *Twombly* case itself. *Id.* Adherence to these pleading standards is particularly important in antitrust cases, in light of the "high costs and frequent abuses associated with antitrust discovery." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009); *see also Twombly*, 550 U.S. at 558-59 (discussing unusually high costs of discovery in antitrust cases).

conspirators participated in unidentified "meetings, conversations and communications" where they allegedly discussed supply and pricing, supposedly agreed to unidentified restrictions, and somehow monitored adherence to those alleged agreements.  (Compl. ¶ 134.)  Not a single meeting or communication is identified—not a time, not a location, not a subject matter, not a single participant, not even a year in which a meeting or communication took place.  Such vague allegations without specificity as to time, place, person, or content do not satisfy *Twombly*. *See In re Air Cargo Shipping Servs. Antitrust Litig.*, 2008 WL 5958061, *7 (E.D.N.Y. Sept. 26, 2008) (allegations "that there were 'meetings,' 'secret meetings,' 'communications,' or 'joint agreements' entered into by "defendants' representative 'at the highest levels' in 'various venues … including Europe, the United States, South America and Asia'" were "so broad and so vague that they fail to stand for anything, much less raise a plausible inference of an agreement"); *Love Terminal Partners, L.P. v. City of Dallas, Tex.*, 527 F. Supp. 2d 538, 553-54 (N.D. Tex. 2007) (dismissing antitrust conspiracy claim where "no specific time, place, or person involved in the alleged conspiracy" was alleged because without such facts the complaint "stops short of the line between possibility and plausibility of entitlement to relief").

### 2.    Plaintiffs do not adequately allege a restraint of trade.

Moreover, even if Plaintiffs had factually alleged that these supposedly conspiratorial meetings occurred, the Complaint still falls short of alleging the details of what was agreed at the alleged meetings and how it restrained competition in a relevant market.  As the Supreme Court in *Twombly* made clear:  a complaint must allege "enough factual matter (taken as true) to suggest that an agreement was made."  550 U.S. at 556; *see also In re Late Fee & Over-Limit Fee Litig.*, 528 F. Supp. 2d 953, 962 (N.D. Cal. 2007) (*Twombly* requires "concrete allegations about the content and circumstances of any actual agreement").

This is critical because mere allegations of meetings, discussions and communications would not give rise to liability on a conspiracy claim under Section 1. *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990) ("[M]ere association with conspirators is not enough to establish participation in a conspiracy."). After all, taking a meeting does not violate antitrust law; and pleading a meeting does not state a claim under antitrust law. *See In re Baby Food Antitrust Litig.,* 166 F.3d 112, 126 (3d Cir. 1999) (noting that "communications between competitors do not permit an inference of an agreement to fix prices unless 'those communications rise to the level of an agreement, tacit or otherwise.'"); *United States v. Nippon Paper Industries Co.*, 62 F. Supp. 2d 173, 180-81 (D. Mass. 1999) ("Manufacturers can lawfully meet to discuss common concerns."). Plaintiffs cannot merely assert factual circumstances where illicit agreement could be imagined or is possible; *Twombly* and its progeny teach that actual agreement must be plausibly inferred from the factual allegations.

Here, the Complaint contends only that the alleged conspiracy involved "aggressive tactics" and "supply restrictions (such as restrictive covenants) and pricing" and fails to allege any facts about: (1) what the aggressive tactics were, who they were used against, and what effect they had on competition in any market; (2) what the restrictive covenants were, in which contracts were they contained, and how they prevented anyone from competing in a relevant market; (3) what the alleged agreement about pricing was, which products and customers were involved, and what time periods were affected. Without these factual allegations, it is impossible to tell whether there was any market restraint, which is the crux of a viable Section 1 claim. The Fifth Circuit has stressed that where insufficient factual allegations render "assertions regarding market injury … completely speculative," dismissal is required. *Marucci Sports*, 751 F.3d at 376 (dismissing Section 1 claim where plaintiff alleged only that its own business was harmed by

9

regulations concerning aluminum and composite baseball bat specifications, and failed to allege facts that competition within the market generally was harmed). The absence of details like these reveal Plaintiffs' claim to be mere speculation.

Moreover, the Complaint reveals that Plaintiffs' speculation is not just unfounded; it is implausible. Plaintiffs admit that the importation of shrimp from foreign countries completely dominates the U.S. consumer market for shrimp, accounting for 75% of the shrimp sold in this country. (Compl. ¶ 34.) Even the small share of domestically-sourced shrimp is split between wild-caught shrimp and shrimp raised on farms. (Compl. ¶ 35.) The number of Texas shrimp farmers who wish to develop their own broodstock, rather than simply buying PLs or juveniles and growing them for sale, is smaller still—a small slice of a small pie that is overwhelmed with foreign competition. Yet Plaintiffs theorize that the defendants entered into a pointless conspiracy to restrain the options available to this small group of Texas shrimp farmers, even though the overwhelming dominance of foreign competition and the availability of wild shrimp would prevent the shrimp farmers from raising consumer prices. At most, such a conspiracy would make it harder for farmed shrimp to compete with imported or wild-caught shrimp, which would end up hurting companies like SIS that supply shrimp farmers. When a plaintiffs' theory of the case assumes that the defendants acted in a way contrary to basic economic principles, the claim begins far from the plausibility line. Here, the conclusory Complaint lacks the factual allegations necessary to demonstrate that Plaintiffs' claim is legally and economically plausible under *Twombly*. Plaintiffs' Section 1 claim should be dismissed.

**B.    Plaintiffs do not state a Section 2 claim for monopolization or attempted monopolization of any relevant market (Count II).**

In Count II, Plaintiffs allege that by "employing restrictive covenants" and unspecified "other means," the Defendants monopolized or attempted to monopolize "any part of the trade or

commerce among the several States or with foreign nations, in violation of 15 U.S.C. § 2." (Compl. ¶ 136.)

To state a claim for monopolization, the plaintiff must allege that: (1) the defendant possesses monopoly power in the relevant market, and (2) the defendant willfully acquired or maintained that power "as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Dimmitt Agri Indus., Inc. v. CPC Int'l Inc.*, 679 F.2d 516, 525 (5th Cir. 1982); *Rio Grande Royalty*, 786 F. Supp. 2d at 1210-11. To state a claim for attempted monopolization, the plaintiff must allege "(1) that the defendant has engaged in predatory or anticompetitive conduct[2] with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power" in the relevant market. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). Finally, to state a claim for conspiracy to monopolize, the plaintiff must allege: (1) specific intent to monopolize, (2) the existence of a combination or conspiracy to monopolize, (3) an overt act in furtherance of the combination or conspiracy, and (4) an effect upon a substantial portion of interstate commerce. *Stewart Glass & Mirror, Inc. v. U.S. Auto Glass Disc. Centers, Inc.*, 200 F.3d 307, 316 (5th Cir. 2000).

For the following reasons, Plaintiffs fail to state a Section 2 claim.

### 1.     Plaintiffs do not sufficiently allege a relevant market.

A prerequisite for all Section 2 claims is that the plaintiff adequately identify and define the relevant market. *See Felder's Collision Parts, Inc. v. Gen. Motors Co.*, 960 F. Supp. 2d 617, 626 (M.D. La. 2013) (a trial court may dismiss a Section 2 claim for a plaintiff's failure to define the relevant market because that definition "provides the framework against which economic power can be measured"); *Rockbit Indus. U.S.A., Inc. v. Baker Hughes, Inc.*, 802 F. Supp. 1544,

---

[2]    "Predatory or anticompetitive conduct is conduct that tends to impair the opportunities of rivals and either does not further competition on the merits or does so in an unnecessarily restrictive way." *Rio Grande Royalty*, 786 F. Supp. 2d at 1211.

1550 (S.D. Tex. 1991) (granting motion to dismiss and holding that plaintiff's defining product and geographic markets is a "threshold requirement" for Section 2 claims). Whether a plaintiff has identified a valid relevant market can sometimes be a fact issue, but it can be decided as a matter of law on a motion to dismiss where, as here, the plaintiff "fails to define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand, or alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Apani Sw., Inc. v. Coca-Cola Enterprises, Inc.*, 300 F.3d 620, 628 (5th Cir. 2002).

Although it is not completely clear, Plaintiffs appear to contend that the relevant markets are: (1) the market for "research and development of shrimp broodstock," and (2) "the sale of postlarvae shrimp and shrimp broodstock in the United States and worldwide." Compl. ¶ 1. At other times in the Complaint, Plaintiffs appear to focus on a market of Texas shrimp farmers, *e.g.*, Compl. ¶ 41, though they do not expressly claim that Texas farmers are a market distinct from other shrimp farmers.

Whether worldwide, nationwide, or limited to Texas, Plaintiffs' market definition is legally insufficient for the same reasons outlined by the Fifth Circuit in *Apani*: it "clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor." *Apani*, 300 F.3d at 628. This is made clear by the Complaint itself. Although Plaintiffs contend they are unable to compete in shrimp breeding without SIS's broodstock or PL shrimp, they admit the following contradictory market conditions: (1) the vast majority of shrimp consumed in the U.S. comes from overseas (Compl. ¶¶ 34, 46, 47); (2) the U.S. market comprises both farmed shrimp and wild-caught shrimp (Compl. ¶ 35); and (3) there are alternative sources of U.S. broodstock available that can be shipped from Hawaii (Compl. ¶

60 & n.7).  Plaintiffs allege no facts explaining why they could not develop shrimp broodstock in Texas from imported shrimp, wild-caught shrimp, or Hawaiian-sourced shrimp; nor do they offer the Court any detail that would help the Court understand whether there is any economically relevant difference between these options, other than Plaintiffs' preference to take what they have not paid for.

Moreover, Plaintiffs do not allege that Hawaiian competitors or foreign competitors would be unable to supply Texan or other U.S. shrimp farmers if SIS were to attempt to raise prices above the competitive level.  A plaintiff that does not allege specific facts about the ability or inability of alternative suppliers to enter the market has not sufficiently pled a relevant market. *See Felder's*, 960 F. Supp. 2d at 627-28.

Because Plaintiffs' market definition fails to account for alternative sources of shrimp for shrimp farmers to selectively breed their own broodstock and PL shrimp, prevailing law requires that Plaintiffs' Section 2 claims be dismissed.

### 2.    Plaintiffs do not allege that SIS possesses or has a dangerous probability of achieving monopoly power.

Monopoly power, as understood in Section 2 cases, is the power to control prices or exclude competition.  *United States v. E.I. DuPont de Nemours & Co.*, 351 U.S. 377, 391 (1956); *Deauville Corp. v. Federated Dep't Stores*, 756 F.2d 1183, 1188 (5th Cir. 1985).  "Monopoly power under Section 2 is something greater than the market power sufficient to establish a Section 1 claim."  *Rio Grande Royalty*, 786 F. Supp. 2d at 1195.  To survive a motion to dismiss, the plaintiff must allege facts that "make it plausible to conclude" that the defendant has monopoly power, including "allegations about market conditions" that "assist the Court" in determining whether the defendant could plausibly sustain that power.  *See id.* at 1213.  As

described above, an allegation of market power or a dangerous probability of achieving market power are critical elements of monopolization and attempted monopolization, respectively.

Other than in a threadbare legal conclusion (Compl. ¶ 130), the Complaint does not allege that SIS has or is likely to obtain monopoly power, does not allege that SIS can exclude competition, and does not allege that SIS has the power to control prices.  The complete absence of allegations as to this element is dispositive.

Plaintiffs' only half-hearted attempt to allege monopoly is the claim that SIS is "effectively" the only supplier of PLs to Texas shrimp farmers (Compl. ¶ 41).  While it is not clear what Plaintiffs mean in calling SIS "effectively" the only supplier,[3] this is at most a vague allusion to SIS having a significant market share—which is insufficient to allege monopoly power.  Even an assertion that a defendant "dominate[s] the market" is insufficient to allege monopoly power, because companies with large market share often lack power to raise prices due to such factors as potential competitors, low barriers to entry, or elastic consumer demand.  *See Felder's*, 960 F. Supp. 2d at 628.  Here, Plaintiffs' failure to allege market power with any facts is telling.  They admit that there is a deluge of international competition in the shrimp business that overwhelms the local industry, making it almost impossible to conceive that a supplier to domestic shrimp farmers could hope to effectively raise prices or exclude competition.  Plaintiffs' failure to allege how SIS could exercise power and raise prices to supra-competitive levels therefore prevents their claim from being plausible, and warrants dismissal.

### 3.    Plaintiffs do not allege Defendants willfully obtained monopoly power in the alleged relevant market.

Plaintiffs' monopolization claim requires Plaintiffs to adequately plead that Defendants willfully achieved, acquired, or maintained market power, rather than such power having

---

[3]    Plainly, Plaintiffs were unwilling to allege that SIS is *actually* the only supplier of broodstock, perhaps for the same reason Plaintiffs admitted that there were Hawaiian sources of broodstock available.

resulted "from growth or development as a consequence of a superior product, business acumen, or historic accident." *Dimmitt*, 679 F.2d at 525. Plaintiffs do not address the element of willfulness anywhere in the Complaint. On the contrary, Plaintiffs seem to offer begrudging praise for SIS's decades of work applying a "selection program to develop its broodstock" to favor specific "genetic characteristics" such as "growth rate" and "disease resistance."[4] Even if Plaintiffs had alleged market power at all, they have not alleged that the market power is the result of anything other than SIS's investment and expertise in shrimp breeding. Therefore, they have not alleged a claim for monopolization.

### 4.    Plaintiffs do not allege facts regarding any conspiracy to monopolize.

As established above, Plaintiffs' Complaint wholly fails to allege facts regarding a conspiracy involving Defendants. The failure to adequately plead a Section 1 conspiracy also forecloses Plaintiffs' Section 2 claim for conspiracy to monopolize, and for the same reasons. *See Corr Wireless Commc'ns v. AT&T Inc.*, 893 F. Supp. 2d 789, 810 (N.D. Miss. 2012).

### 5.    The alleged refusal of SIS to sell shrimp to Plaintiffs for broodstock purposes is not anticompetitive conduct.

For purposes of this motion to dismiss, the Court must assume the truth of Plaintiffs' (incorrect) allegation that SIS refuses to sell shrimp for use as broodstock. Even if that were the case, the crux and central motivation of Plaintiffs' Complaint is not that Plaintiffs want the freedom to compete with SIS. Rather, Plaintiffs want to free-ride on SIS. Plaintiffs allege that they want to utilize SIS's PL shrimp—to take advantage of SIS's years of development and benefit from SIS's proprietary research—and use that shrimp to develop Plaintiffs' own competing brand of broodstock rather than starting from scratch, as a true competitor would.

---

[4]    Compl. ¶ 55. Notwithstanding the inflammatory tone of Plaintiffs' remarks about SIS's having acquired some shrimp stocks through federal research programs in the 1980's, Plaintiffs clearly admit that the shrimp products SIS sells today are the result of SIS's substantial investment in its own genetic selection program. *Id.*; Compl. ¶¶ 64, 69, 108.

15

Plaintiffs, upset that SIS will not voluntarily support and subsidize their business, characterize SIS's unwillingness to sell low-cost shrimp to them for breeding purposes as an antitrust violation. But antitrust laws do not allow one company to pirate another's investment.

The U.S. Supreme Court has made it clear that, with rare and limited exceptions not relevant here, antitrust laws do not prohibit a company—even a monopolist—from refusing to provide its products to a competitor or potential competitor. *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 411-12 (2004) (noting that there is generally "no duty to aid competitors" under the antitrust laws). As the Court recognized, the development of a competitive advantage through innovation and business acumen is to be encouraged, not discouraged. Forcing companies to share the fruits of their labor with would-be competitors would discourage companies from making those innovative investments in the first place and actually encourage collusion. *Id.* at 407-08. Indeed, why bother investing decades in developing high quality shrimp if one day a competitor can use the law to take a free ride on your work, and nullify your hard-earned competitive advantage? The Sherman Act "does not restrict the long recognized right of [a] trader or manufacturer engaged in an entirely private business, freely to exercise his own independent discretion as to parties with whom he will deal." *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919). With respect to the anticompetitive conduct element of attempted monopolization, and with respect to Plaintiffs' antitrust claims generally, antitrust laws do not and will not force SIS or any market participant to sell its products to Plaintiffs.

**C.     Plaintiffs do not allege the existence of any agreement prohibited by Clayton Act Section 3 (Count III).**

Next, Plaintiffs assert that Defendants violated Section 3 of the Clayton Act.[5]  "Section 3 of the Clayton Act makes it unlawful to sell goods on the 'condition, agreement, or understanding' that the purchaser refrain from dealing with competitors of the seller if the effect 'may be to substantially lessen competition or tend to create a monopoly in any line of commerce.'"  *Apani*, 300 F.3d at 625 (quoting 15 U.S.C. § 14 (1997)).  Two types of competitive restrictions may be challenged under section 3: "tying restraints" and "exclusive dealing arrangements."  *Id.* (citing *Gulf Oil Corp. v. Copp Paving Co., Inc.*, 419 U.S. 186, 194 (1974)).  A tying restraint occurs "when a seller agrees to sell one product on the condition that the buyer also agree to purchases [*sic*] a different, or tied product, or the buyer agrees that he will not purchase the same product from another supplier."  *Id.* (citing *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1048 n.5 (5th Cir. 1982)).  An exclusive dealing arrangement "occurs when a seller agrees to sell its output of a commodity to a particular buyer, or when a buyer agrees to purchase its requirements of a commodity exclusively from a particular seller."  *Id.*

Plaintiffs do not allege the existence of any tying restraint or exclusive dealing arrangement.  According to the Complaint, GBT purchases only one product from SIS:  post-larvae shrimp.  Plaintiffs do not claim that GBT must buy a separate "tied" product as a condition of purchasing PL shrimp.  Nor does GBT identify any contract terms that prohibit looking elsewhere for PL shrimp.  Indeed, Plaintiffs do not plead the existence of any agreement that is even subject to Section 3 of the Clayton Act.  Count III should be dismissed.

---

[5]    Although the Complaint at one point refers to Section 14 of the Sherman Act, the code citation in the Complaint (15 U.S.C. § 14) is actually Section 3 of the Clayton Act.  There is no Section 14 in the Sherman Act.

**D.      Plaintiffs do not state a claim under Texas antitrust law (Count IV).**

In Count IV, Plaintiffs contend that the allegations comprising their federal antitrust claims also state a claim for violation of the Texas Free Enterprise and Antitrust Act, TEX. BUS. & COM. CODE §§ 15.01 *et seq.* ("TFEAA").  (Compl. ¶¶ 139-40.)  TFEAA, the state-law counterpart to the federal Sherman Act, expressly states that it is to be construed in harmony with "federal judicial interpretations of comparable federal antitrust statutes to the extent consistent with [its] purpose" of maintaining and promoting economic competition within trade and commerce occurring in Texas.  *Id.* § 15.04; *Times Herald Printing Co. v. A.H. Belo Corp.*, 820 S.W.2d 206, 211 (Tex. App.—Houston [14th Dist] 1991, no writ).

Federal courts hold that the pleading requirements for federal antitrust claims apply equally to TFEAA claims.  *Apani*, 300 F.3d at 628 ("Texas courts have adopted federal standards for determining violations of the TFEAA, including the use of a relevant market to determine whether substantial reductions in competition have occurred.").  Indeed, courts in this district have applied *Twombly* and dismissed TFEAA claims where the complaint failed to include factual allegations sufficient to raise the right to relief above the level of speculation.  *See, e.g.*, *Elton Porter Marine Ins. Agency v. Markel Am. Ins. Co.*, No. CIV.A. H-11-4432, 2012 WL 2050254, at *2 (S.D. Tex. June 6, 2012).  For example, in *In re Shipley Garcia Enterprises LLC*, No. 11-20016, 2014 WL 1329252 (Bankr. S.D. Tex. Mar. 28, 2014), the plaintiffs asserted a TFEAA claim and made conclusory allegations that the defendants tried to "monopolize, control and restrain trade of Harley–Davidson motorcycles, parts and motor clothes within the state by constructively mandating that, among other things, [plaintiff] (and other dealers) use Harley Credit for financing in order to sell its motorcycles."  *Id.* at *9.  But because the complaint lacked factual allegations describing "the practices at issue or how they were allegedly unfair, discriminatory and anti-competitive" sufficient to satisfy the *Twombly* standard, the court held

that the complaint did not assert a legally viable TFEAA claim either. *Id.* Thus, for the same reasons detailed above with respect to federal antitrust claims, Plaintiffs do not state a claim for violation of state antitrust law.

## IV.   Plaintiffs' claim for declaratory relief must be dismissed.

### A.   Because Plaintiffs do not state an antitrust claim, their request for declaratory relief based on an illegal restraint of trade fails (Count V).

Plaintiffs allege that GBT made multiple purchases of post-larvae shrimp from SIS. (Compl. ¶ 84.)  Plaintiffs allege that before SIS would sell post-larvae shrimp to GBT, SIS required GBT to sign a restrictive covenant barring GBT from using SIS's post-larvae shrimp to compete with SIS by creating broodstock shrimp descended from those SIS shrimp for sale to third parties.[6]  In Count V, Plaintiffs seek a declaration that the covenant between SIS and Plaintiffs is not "legal," is "unenforceable," is "not a valid contract," and "is an invalid and illegal restraint of trade."  (Compl. ¶¶ 148-51.)

Of course, these are the same legal conclusions that Plaintiffs assert in Counts I through IV, all of which are based on the same covenant.  (Compl. ¶¶ 126, 136, 138, 140.)  With respect to Count V, they simply seek a declaration as a remedy for the alleged restraint of trade identified in Counts I through IV.  As a result, there is no further analysis required for dismissal. "Because a declaratory judgment is 'remedial in nature,' where all of a plaintiff's causes of action are dismissed, a related declaratory judgment claim should also be dismissed." *See, e.g.*, *Guajardo v. JP Morgan Chase Bank, N.A.*, 605 F. App'x 240, 249-50 (5th Cir. 2015) (citing *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 243 (5th Cir. 2014)).

---

[6]    Compl. ¶¶ 145-46.  Despite vague implications in the Complaint, there seems to be no legitimate dispute about the applicability of the non-compete agreement to Plaintiffs.  Although Plaintiffs mention that Mr. Harvin signed the agreement and that Plaintiff SPD did not, they concede that both Mr. Harvin and SPD are GBT agents and that Mr. Harvin executed the agreement because GBT was required to execute it.  (Compl. ¶¶ 20, 24, 146.)

**B.    Because Figueras does not allege that the SIS employee handbook contains a non-competition clause, his request for declaratory relief fails (Count VI).**

In Count VI, one Plaintiff, Mr. Figueras, alleges that SIS claims he had "agreed to a restrictive covenant—unlimited in geographic scope and time period—that purports to prevent him from competing with SIS anywhere in the world until the end of time." (Compl. ¶ 116.)  He claims the covenant "would preclude Mr. Figueras from ever working for a competitor of SIS." (Compl. ¶ 155.)  He therefore seeks a declaration invalidating what he calls "the broad confidentiality provision in SIS's employee handbook." (Compl. ¶¶ 154.)  But Mr. Figueras pleads only a conclusion, not facts, that the confidentiality provision in the SIS employee handbook prevents him from competing with SIS.  In fact, there is *no non-competition clause whatsoever* in the handbook's confidentiality provision.

The confidentiality provision is attached hereto as Exhibit A-1 for the Court's review.[7] As the Court can see, the confidentiality provision:

- Does not prohibit former employees from working for SIS competitors;

- Does not contain any language about where or for whom a former SIS employee can work; and

- Does not even include the words "compete," "competitor," or "competition."

The provision at issue is simply a confidentiality term:  employees agree they will not disclose or use SIS's confidential information, and they agree to hand over confidential materials at the end of their employment.  Contrary to what Mr. Figueras asserts in the Complaint, there is simply no language in the handbook prohibiting employees from working for whomever they choose.

---

[7]    Because the confidentiality provision is central to Figueras' claim and Figueras referred to the document in the Complaint, the Court may receive and consider the provision without converting this motion to dismiss to a motion for summary judgment.  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000) (citing *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994); *Field v. Trump*, 850 F.2d 938, 949 (2d Cir. 1988); *Sheppard v. Texas Dep't of Transp.*, 158 F.R.D. 592, 595 (E.D. Tex. 1994)).

20

Because Mr. Figueras does not plead facts in support of his conclusion that he is subject to a non-competition clause, his claim must be dismissed.

Moreover, Mr. Figueras does not allege that the confidentiality provision is somehow equivalent to a non-competition clause, or that he must use SIS's confidential information if he is to compete with SIS. Far from it: he alleges at length that he had developed "vast experience" and "expertise in shrimp farming" and was already "internationally recognized" before coming to work at SIS. (Compl. ¶¶ 91, 97, 99.) He claims he had implemented new shrimp production plans and technologies for at least four different companies and governments prior to working for SIS, demonstrating he was long able to compete in the shrimp production business without the benefit of any knowledge obtained from SIS. (Compl. ¶¶ 89-97.) Mr. Figueras says nothing about why it would suddenly be necessary that he steal confidential information from SIS to continue working in the shrimp production business.

Though Mr. Figueras seems to contend that there is a *per se* rule against employee confidentiality agreements of unlimited duration, that is not the case. Many courts recognize that employers have legitimate interests in protecting their confidential business information, and protecting that interest does not require limits on time or scope the way noncompetition clauses must be limited. *See Synergetics, Inc. v. Hurst*, 477 F.3d 949, 958-59 (8th Cir. 2007) (finding under Missouri law that confidentiality agreements may be enforceable without the time and geographic limits required for a restrictive covenant); *Lear Siegler, Inc. v. Ark-Ell Springs, Inc.*, 569 F.2d 286, 289 (5th Cir. 1978) (holding that an employee's "agreement not to disclose information, unlike the covenant not to compete, cannot be challenged as an unreasonable restraint of trade"); *Bernier v. Merrill Air Engineers*, 770 A.2d 97, 103-04 (Me. 2001) (employee nondisclosure clause was reasonable, even though unlimited in duration, because it protected

employer's confidential information without prohibiting former employee from working for competitors or using his general knowledge); *Revere Transducers, Inc. v. Deere & Co.*, 595 N.W.2d 751, 761 (Iowa 1999) (holding that confidentiality agreements restrict disclosure, not employment opportunities, and therefore need not include the same geographic or time limits applicable to non-compete clauses).  To the extent Florida law governs this employee handbook used during Mr. Figueras' Florida employment, the Eleventh Circuit affirmed the decision of a federal district court in Florida that a former employee could be restrained from *competing* with his former employer for a *limited* time of six months, but could be *permanently* enjoined from *disclosing* his former employer's confidential information.[8]

Mr. Figueras does not plead facts showing there is a non-competition agreement in place or that the confidentiality provision he signed has the effect of a non-competition agreement.  In light of his admissions that he was employable in the shrimp business before obtaining SIS's confidential information, his naked allegation that the confidentiality provision is void for "improperly restrict[ing] employment and competition" (Compl. ¶ 157) does not state a claim.

### C.   Alternatively, Plaintiffs do not plead a basis for jurisdiction over their declaratory relief claims, requiring 12(b)(1) dismissal.

The failure of the Complaint to state a claim under antitrust law means Plaintiffs' requests for declaratory relief may be dismissed.  There is no basis for declaratory relief alleged in the Complaint other than antitrust law.  The only allegations in the complaint as to why Plaintiffs should be excused from complying with the agreements at issue are the assertions that

---

[8]   *See Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1230 (11th Cir. 2009).  The *Proudfoot* court noted that another district court, in an unpublished opinion, held that a confidentiality clause may be limited in duration by a Florida statute applicable to non-competition clauses.  *See id.* at 1232 n.8 (citing *Re/Max Int'l, Inc. v. Citimaxx Corp.*, No. 08-cv-2554, 2009 WL 1883035 (M.D. Fla. June 30, 2009).  But even the courts subscribing to that alternative view find that Florida statute would not *void* a confidentiality clause of unlimited duration; the statute would simply limit its duration, presumptively to a period of two years or less.  *See Audiology Distrib., LLC v. Simmons*, No. 8:12-CV-02427, 2014 WL 7672536, *8 (M.D. Fla. May 27, 2014).  Mr. Figueras, who went to work for Global Blue in the last two years (Compl. ¶ 110), pleads for voidness based simply on the absence of a duration term (Compl. ¶ 157), contrary to any reading of Florida law.

22

the non-competition agreement is an "illegal restraint of trade" and that Figueras' confidentiality agreement is somehow a non-competition agreement.  (Compl. ¶¶ 151, 157.)

It does not appear that Plaintiffs are seeking a declaration that they are not liable for breach of the relevant agreements under state contract law.  After all, Plaintiffs do not even allege that GBT has complied with its non-competition agreement or that Figueras has complied with the confidentiality provision in the SIS employee handbook, a fact that would be the essential basis for seeking a declaration that there was no breach, and the absence of which is sufficient for 12(b)(6) dismissal.  However, to the extent the Complaint could be read to seek such state-law contract declarations, the Complaint would still not state a claim that could be brought in this Court.

To properly plead a declaratory judgment claim, as with any other claim brought in a federal district court, a plaintiff must plead a basis for jurisdiction.[9]  Here, Plaintiffs have not pled a basis for a federal court to decide the state-law question of whether they have complied with their agreements.[10]  The Complaint generally alleges federal question jurisdiction and diversity jurisdiction (Compl. ¶ 9), but the Complaint's allegation of the amount in controversy does not relate to Plaintiffs' theoretical state-law claim on the non-competition issue, or to Figueras' theoretical state-law claim on the confidentiality issue.  The allegation is that all of Plaintiffs' federal antitrust, state antitrust, and other claims *together* satisfy the amount-in-controversy requirement.  An allegation as to the amount in controversy that encompasses both federal question claims and state law claims will not support diversity jurisdiction if the federal

---

[9]    *See* 5 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1238 (2004); *see also id.* § 1206 & n.4 (collecting cases on the requirement to allege subject matter jurisdiction, in light of the limited jurisdiction of federal courts and the prohibition on presuming subject matter jurisdiction).

[10]    If the substantive law on which a party seeks a declaration is state law, the fact that the party proceeds under the federal Declaratory Judgment Act does not give rise to a federal question.  *See Ultraflo Corp. v. Pelican Tank Parts, Inc.*, 823 F. Supp. 2d 578, 584 (S.D. Tex. 2011) ("The Declaratory Judgment Act, although it is a federal law, does not confer jurisdiction on the federal courts.").

questions are dismissed. *See McCoy v. Chevron USA Prod., Inc.*, 46 F. Supp. 2d 510, 514 (E.D. La. 1999) (dismissing case for want of jurisdiction despite $1.5 million damages claim after federal questions were dismissed, as complaint did not allege value of surviving state law claim).

Moreover, the Complaint does not allege the residence of the five limited liability companies in the case, four of whom are Plaintiffs. Although Plaintiffs allege that their LLCs are organized under Texas law, that does not determine the citizenship for diversity purposes; the citizenship of the *members* of the LLC is the legally relevant fact. *See Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008) ("All federal appellate courts that have addressed the issue have reached the same conclusion: like limited partnerships and other unincorporated associations or entities, the citizenship of a LLC is determined by the citizenship of all of its members."). Because the party seeking the federal forum has the burden of establishing jurisdiction, a party asserting diversity jurisdiction must "'distinctly and affirmatively allege' the citizenship of the parties" to avoid dismissal. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

Thus, once the federal antitrust and state antitrust claims are dismissed for failure to state a claim,[11] the Complaint will contain no allegation of an amount in controversy specific to any theoretical state-law claim that Plaintiffs as a group (for Count V) or Mr. Figueras alone (for Count VI) could pursue, and no allegations of citizenship sufficient to demonstrate diversity jurisdiction. Federal jurisdiction cannot be presumed. Without allegations by Plaintiffs as to diversity and amount in controversy with respect to these specific claims, each is subject to dismissal. *Howery*, 243 F.3d at 919-20.

---

[11]    A federal court should ordinarily decline to entertain a case on the basis of supplemental jurisdiction if all issues within the court's original subject matter jurisdiction are dismissed before trial. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); 28 U.S.C. § 1367(c)(3).

**V.      Prayer**

SIS respectfully requests that the Court dismiss Plaintiffs' Complaint for failure to state a claim under Rule 12(b)(6).  Alternatively, to the extent the Complaint is read to seek declaratory relief on state law grounds other than antitrust law grounds, SIS requests that the Court dismiss those state law requests for want of subject matter jurisdiction under Rule 12(b)(1).

Respectfully submitted,

Vinson & Elkins L.L.P.


/s/Jason M. Powers
Jason M. Powers
Attorney-in-Charge
Texas Bar No. 24007867
Federal Bar No. 23567
James A. Reeder
Texas Bar No. 16695010
Federal Bar No. 12381
1001 Fannin Street, Suite 2500
Houston, Texas 77002-6760
Telephone:  713-758-2522
Facsimile:  713-615-5809

***Attorneys for Defendant***
***Shrimp Improvement Systems, L.L.C.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 19, 2016, a true and correct copy of the foregoing document was served via the Court's electronic filing system on the following:

Joe A. Flores
500 N. Water St., Suite 515
Corpus Christi, TX  78401

John Da Grosa Smith
Kristina M Jones
Smith LLC
1320 Ellsworth Industrial Boulevard
Suite A1000
Atlanta, GA  30318

*/s/Jason M. Powers*
Jason M. Powers

US 4027560